### JOHN B. THRASHER VS. M. A. GILLESPIE.

1. LANDLORD AND TENANT: *Distress for rent. Case in judgment.*

T. leased to B. a plantation for the year 1870. B. leased a portion of the same to G. In a proceeding in chancery a receiver was appointed to collect the rents due to T. The receiver sued out an attachment, and had it levied on ten bales of cotton, raised by G., for the rent due. G. replevied the cotton, and T. and the receiver defended. G. claimed damages of B. for breach of contract, and for trespasses by stock. *Held,* that it was error to instruct the jury to render a verdict for the plaintiff in replevin, "if the jury believe the rent was not due at the date of the issuance of the attachment," because it ignored the lease from T. to B. It was error, also, to instruct the jury that they should find for the plaintiff "unless there was a certain and fixed amount of rent due." This is not the law. The rent should be fixed and certain, or capable of being made so by calculation. It is error to give to the jury any instruction which will withdraw from them substantially all discretion in passing upon the facts in the case.

ERROR to the Circuit Court of *Claiborne* County.

Hon. A. ALDERSON, Judge.

The facts in the case necessary to a full understanding of it are stated in the opinion of the court.

The following is assigned for error, to wit:

1. That the court allowed the plaintiff, Gillespie, to amend the pleadings and proceedings by filing affirmative matter in evidence; and, after such amendment was made, that the court refused the application for a continuance, made by defendant, on the ground of surprise, and compelled the defendant to proceed with the trial, notwithstanding said amendment.

2. That the court, against the defendant's objection, allowed said evidence to go to the jury, in *recoupment* of damages, and against the demand of the defendant, Thrasher, for rent.

3. That the court erred in giving each and all of the instruc-tions to the jury, numbered 1, 4, 5, 6, 7, and 9, for Gillespie.

4. That the court refused to give to the jury all or any of the instructions asked by the defendant.

*A. H. Handy*, for plaintiff in error:

Cited and commented on the. following authorities : Section 599, Code, 1871 ; Spenser's case, 5 Coke, 16 ; 1 Smith's Lead. Cas., 23 (margin) ; Comyn's Land. & Ten., 258 (margin) ; 4 Law Library ; Taylor's Land. & Ten., § 109 ; ib., § 16 ; Holford *v.* Hatch, Doug., 175, 178 ; Smith's Land. & Ten., 296 ; Comyn's Land. & Ten., 273 (margin) ; Note T, contained in 4 Law Library ; Taylor's Land. & Ten., § 448 ; Comyn's Land. & Ten., 368 (margin) ; 4 Kent's Com., 596 (margin) ; Sedgw. on Dam., 441 (margin) ; ib., 444 ; 4 Sandf., 447 ; Taylor's Land. & Ten., 374, and cases there cited ; Myer *v.* Estell, 47 Miss., 18 ; Garrett *v.* Kirkman, 33 ib., 389 ; Greenwade *v.* Mills, 31 ib., 464 ; Fairly *v.* Fairly, 38 ib., 280 ; Whitfield *v.* Westbrook, 40 ib., 317 ; Young *v.* Power, 41 ib., 209 ; ib., 366 ; Briscoe *v.* McElvan, 43 ib., 566 ; Taylor's Land. & Ten., § 561 ; Broom's Leg. Max., 556 (margin) ; 10 Johns., 91 ; 9 Wend., 305 ; 51 Eng. C. L. R., 145 ; 3 Starkie on Ev.; 1297 (margin) ; 2 Greenl. on Ev., § 566 (10th ed.) ; 4 Cranch, 299 ; Taylor's Land. & Ten., § 754 ; S. & R., 357 ; 1 Archb. Nisi Prius, 630 ; Morris on Repl., 179 ; Wilkinson on Repl., 83 (margin), contained in 4 Law Library.

*Patton, Berry & Drake*, for defendant in error :

Cited and commented on the following authorities : 41 Miss., 225 ; ib., 241 ; 43 ib., 464 ; 6 How., 577 ; 9 Ala., 198 ; 36 Miss., 246 (top) ; 39 ib., 613 ; 33 ib., 383 ; 31 ib., 546, 607 ; 33 ib., 433 ; ib., 550 ; 2 Ham., 215 ; 4 Shep., 329 ; Taylor's Land. & Ten., §§ 636, 448, 108, 109 ; 8 N. H., 22 ; 2 Metc., 504 ; Code, 339 ; 43 Miss., 568 ; 9 Wend., 303, 305 ; Taylor's Land. & Ten., §§ 573, 574, 630, 631 ; 2 Pars. on Con., 740, 741 ; 7 Hill, 53 ; 4 Wend., 490–494 ; 8 ib., 109–115 ; 22 ib., 155–157 ; 7 Ark., 699 ; Livingston's Law Mag.,

(Jan. No.), 1854, p. 73; Code, art. 7, p. 341; 34 Miss., 267–269; 2 Hill, 475; Taylor's Land. & Ten., 567, 572; Code, art. 15, p. 342; 31 Miss., 446–448; 43 ib., 566–568; 11 S. & M., 162–164; 1 Brev., 251; 3 ib., 488; 3 Penn., 30–34, 55; Addis., 347; Comst., 637; 1 Bay, 315; ib., 443; 3 McCord, 484; Taylor's Land. & Ten., 415 (top); 25 Wend., 443; 7 Hill, 519; 1 Sandf., 260; 4 Leigh, 484; 1 Yates, 460; 3 Barr, 444; 30 Miss., 361; 29 ib., 45 (bot.); 1 S. & M., 381; 5 ib., 21; 4 How., 338; 3 ib., 219; 45 Miss., 189; ib., 658; ib., 608; 36 ib., 660.

TARBELL, J., delivered the opinion of the court:

Thrasher leased his plantation to Barnes, for the year 1870, the term ending with the year. Barnes leased or assigned a portion of the land in cultivation to Gillespie, at the rate of $5 per acre for so many acres as he should cultivate. It became a question, on the trial in the court below, whether Gillespie was a mere sub-lessee, or tenant, under Barnes, or whether he had not become, by their arrangement, a tenant to Thrasher, and, to the extent of the land occupied by him, standing in the place of Barnes—bound to that extent to keep and observe all the covenants which the latter had entered into with Thrasher. Gillespie knew of the relation of Barnes and Thrasher as lessee and lessor. There was a proceeding in chancery, wherein a receiver was appointed to receive the rents of the above plantation from Barnes and other tenants, including Gillespie. This receiver, upon affidavit, procured an attachment to be issued, whereby ten bales of cotton, raised by Gillespie, were seized for rent due. It was claimed that Gillespie cultivated ninety acres, and that the amount due was $450. Gillespie replevied the cotton seized, and both the receiver and Thrasher appeared to defend. Thrasher pleaded specially, setting out somewhat fully his lease or contract with Barnes, the proceedings in chancery, and the attachment of the cotton for the rent due from Gillespie. To this plea the latter replied no rent due, and concluded to the country. On

the trial Gillespie was twice permitted to amend his pleadings. First, to enable him to show damages by the failure of Barnes to perform his part of the contract, and afterwards to amend his declaration so as to claim fifteen, instead of ten, bales of cotton, and $1,500 damages, instead of $1,000. The terms of the agreement between Barnes and Gillespie rested in parol. Gillespie contended that his term continued until he could gather and gin his crop. To show that the term of Barnes terminated absolutely with the year 1870, the defendants in the action offered in evidence the written contract, or lease, executed between Thrasher and Barnes. This was objected to by the plaintiff in the suit, and rejected by the court. The trial developed a good deal of feeling on both sides, and the facts were somewhat hotly contested. Upon the question of damages by stock, and otherwise, claimed by Gillespie, and the terms of the agreement between him and Barnes, the evidence is thoroughly conflicting and contradictory. A series of nine instructions were asked by the defendants, all of which were refused to be given, as a whole, and none even given for them, either as requested or otherwise, though the series contain several correct and material propositions. Hence the jury were wholly without instructions for the defendants, in a case involving many complicated questions of law and fact.

On behalf of the plaintiff in replevin instructions were given, numbered 1, 4, 5, 6, 7, and 9. The 1st directs a verdict for plaintiff in replevin, if the jury believe the rent was not due at the date of the issuance of the attachment. By this charge the term fixed in the lease from Thrasher to Barnes is ignored, and the verdict made to depend solely upon the term agreed between Barnes and Gillespie. The 4th charge is in substance the same as the 1st. By the 5th the jury were told that, unless there was a certain and fixed amount of rent due, they would find for the plaintiff. This is not the law, yet it might, and doubtless did, control the result. The jury should have been instructed that the rent should be fixed and certain, or capable of being made so by calculation. In this

case Gillespie agreed to pay $5 per acre for so many acres as he should cultivate. The number of acres he cultivated could have been readily ascertained by measurement or estimation, and then the calculation was of the simplest known in any business. This instruction is wrong, both in law and upon the facts. The 6th charge directs a verdict for plaintiff unless the rent was due at a time certain and fixed by the contract. Upon the facts this was also erroneous, and must have been misunderstood by the jury. If Gillespie has a reasonable time to gather and gin his crop, the term would thus be sufficiently fixed and certain. The 7th instruction directs a verdict for plaintiff if the jury believe he was prevented from obtaining, by the act of Barnes, the whole of the premises leased by him. This has reference to the occupation of the dwellinghouse, and not to the land for cultivation. The evidence shows that Gillespie secured all the land he could cultivate; in fact, that he raised more cotton than he could pick, and left some in the field ungathered. As to the dwelling-house, there was evidence that he consented to the occupation of a part of it by a tenant of Barnes, for a consideration. The charge is unconditional and mandatory. It should have presented to the jury the evidence of his acquiescence and compensation, and left the question open for their determination. The 9th charge presents in an unobjectionable form, as far as can be seen, a question of fact as to certain damages; but, with or without this, by the refusal of all instructions for the defendant, and by the others for the plaintiff, all discretion was substantially withdrawn from the jury.

As a whole, the instructions given and refused left no discretion and no alternative to the jury. All that could leave the scales evenly balanced was withdrawn, and a verdict for the plaintiff was inevitable, right or wrong. Whether upon the whole case the result is just, no opinion can, with propriety, be expressed. The testimony is too contradictory for an appellate court to attempt to assume the province of a jury, especially as it is necessary to determine damages by the tres-

passes of stock, and judge of the veracity and credibility of witnesses. The examination which counsel on both sides have bestowed upon the important legal propositions involved will doubtless enable them so far to harmonize, on another trial, as to reach a just and satisfactory conclusion.

Judgment reversed, cause remanded, and a new trial awarded.